UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE LEE PETERSON,                            )
                          Plaintiff,           )
                                               )        No. 1:15-cv-969
-v-                                            )
                                               )        Honorable Paul L. Maloney
DAVID HEYMES, et al.,                          )
                          Defendants.          )
_____)

## OPINION AND ORDER DENYING DEFENDANTS' MOTIONS

This is a wrongful conviction civil lawsuit.  Before the Court are three motions to dismiss, which have been converted to motions for summary judgment.[1]  Defendants assert, among other things, that collateral estoppel bars the claims in this lawsuit arising from Peterson's interrogations and confession.  Defendants argue that Peterson had a fair opportunity to litigate the voluntariness of his confession in a *Walker* hearing, and the matter was resolved against him during the criminal proceedings.[2]  This Court held oral argument on Defendants' motions, and the parties were afforded an opportunity to file supplemental briefs.  Because Peterson's conviction has been vacated, the underlying criminal proceedings have no preclusive effect and Defendants' motions are denied.

---

[1]      ECF No. 34 – motion to dismiss filed by Defendants Greg Somers and Mark Uribe; ECF No. 39 – motion to dismiss filed by Defendants David Heymes and the Village of Kalkaska; ECF No. 40 – motion to dismiss filed by Defendants David Israel and by Kalkaska County.

[2]      *People v. Walker*, 124 N.W.2d 761 (Mich. 1964).

## I.

The parties all filed motions to dismiss under Rule 12(b)(6).[3]  For Rule 12(b)(6) motions, when a document is attached to, referred to, or is otherwise integral to the complaint, the document may be considered by the court without converting the motion to one for summary judgment.  *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011); *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).  However, for motions under both 12(b)(6) and 12(c), when the parties present matters outside the pleadings, the court must convert the motion to one for summary judgment if those matters are not excluded from consideration.  Fed. R. Civ. P. 12(d).  When a court converts the motion to one under Rule 56, the parties must be given a reasonable opportunity to present all material that is pertinent to the motion.  *Id.*

Peterson's amended complaint (ECF No. 3) acknowledges the criminal action but does not allege or otherwise discuss the issues raised in the *Walker* hearing.  For their collateral estoppel issue, Defendants rely on the motion and brief filed by Peterson in the underlying criminal proceedings, as well as the transcript from the *Walker* hearing.  None of those documents are referred to in the complaint, nor are those documents integral to

---

[3]     Rule 12(b) motions "must be made before pleading, if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  Rule 12(c) motions, motions for judgment on the pleadings, are filed at the after a defendant answers the complaint.  Here, Defendants had already filed answers to the complaint, but the pleadings were not closed, *see* Rule 12(c), because one defendant had not yet been served and had not filed an answer.  *See Dunn-Mason v. JP Morgan Chase Bank Nat'l Assoc.*, No. 11-cv-13419, 2013 WL 4084676, at *4 (E.D. Mich. Aug. 13, 2013) (order adopting report and recommendation, where the R&R collected cases establishing when district courts consider the pleadings closed).  The distinction is not important here.  Motions under 12(b)(6) and 12(c) are evaluated using the same standard.  *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).  And, Defendants' motions were converted to ones for summary judgment.

Peterson's claims; the documents are integral to the preclusion issue raised by Defendants. Those documents do not refute or contradict any factual allegation in the complaint. Taking judicial notice of those documents, the proceedings of another court, does not resolve the matter. The majority of circuit courts have sanctioned taking judicial notice of public records for the fact of their existence, and not for the truth of the matters contained within those documents. *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) (collecting cases). "Further, in general a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Id.* (citation omitted). To the extent Peterson and Defendants disagree about the facts the documents purport to establish, Defendants cannot rely on those documents for the purpose of a Rule 12 motion.

Accordingly, at the close of the hearing on Defendants' motions, the Court provided the parties notice that the motions would be converted to motions for summary judgment. (ECF No. 68 Minutes PageID.1062.) Peterson and Defendants filed supplemental briefs.

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a) and (c); *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. Fed. R. Civ. P. 56(c)(1); *Holis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 543 (6th Cir. 2014). The facts, and the inferences drawn from them,

must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Once the moving party has carried its burden, the nonmoving party must set forth specific facts in the record showing there is a genuine issue for trial.  *Matsushita*, 475 U.S. at 574; *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010) ("After the moving party has met its burden, the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'") (quoting *Anderson*, 477 U.S. at 248).  In resolving a motion for summary judgment, the court does not weigh the evidence and determine the truth of the matter; the court determines only if there exists a genuine issue for trial.  *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson*, 477 U.S. at 249).  The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-252.

## II.

The following facts are not in dispute and provide the context necessary to understand the preclusion issue raised by Defendants.  In 1996, an elderly woman was sexually assaulted and then killed in her home in Kalkaska County.  Eventually, Peterson became a suspect.  Peterson was interrogated several times by Defendants Somers and Heymes, and he eventually confessed.  He later challenged the voluntariness of his confession and filed a motion to suppress.  The state court held a *Walker* hearing and found that Peterson's confession was voluntary and admissible.

Investigators secured two DNA samples from the victim. Semen samples collected from the victim's vagina were tested against Peterson's DNA, but no match was found. A second sample was collected from the victim's shirt. At trial, an expert witness testified that she was unable to develop a DNA profile from the shirt sample and, therefore, could not exclude Peterson as the source.

In December 1998, Peterson was convicted by a jury. His conviction was affirmed on direct appeal, and the Michigan Supreme Court denied Peterson's application for leave to appeal. While Peterson's appeals were pending, he filed a motion for post-conviction DNA testing under Michigan Compiled Laws § 770.16. Peterson requested the stain on the victim's shirt be tested for DNA. The trial court denied the motion. Peterson's attempt to secure habeas relief in federal court was denied in 2009.

What happened next was summarized by Judge Janet Allen of the 46th Circuit Court for the County of Kalkaska in her opinion and order granting Peterson's motion for relief from judgment. (ECF No. 35–8.) Attorneys from the Innocence Project at the University of Michigan Law School and attorneys from the Center on Wrongful Convictions at Northwestern University School of Law took notice of Peterson's case. In 2013, Peterson, the County Prosecutor, and the Michigan State Police agreed to additional DNA tests using advanced techniques that were not available at the time of Peterson's trial. The new tests again excluded Peterson as a possible source of the DNA captured0 by the vaginal swab. The new tests also excluded Peterson as a possible source of the DNA from the stain on the victim's shirt.

The results of the new tests were submitted to the Combined Police DNA Index System (CODIS).  The DNA from the vaginal swab matched that of Jason Anthony Ryan.  The DNA tests from the victim's shirt could not exclude Ryan as a possible source.  Ryan was arrested in late 2013.  He had been interviewed in July 1997 as part of the original investigation and had told police that he had been in the area of Kalkaska in October 1996, when the homicide occurred.

With the results of the new DNA tests, Peterson filed a motion for relief from judgment under Michigan Court Rule 6.500, *et seq.*  The Kalkaska County Prosecutor opposed the motion and also argued that a new trial was not warranted by § 770.16.

In a lengthy opinion, Judge Allen granted Peterson's motion.  In the conclusion of the opinion, Judge Allen order that the "judgment of conviction in this case is **VACATED**[.]" (PageID.509.)  Judge Allen also found that § 770.16 applied to Peterson's case and ordered a new trial.  (*Id.*)  Rather than retrying the case, the Kalkaska County Prosecutor opted to dismiss the charges.

## III.

With this background information, the Court turns to Peterson's complaint and Defendants' motions.[4]  As explained above, all Defendants have raised collateral estoppel as a defense, and the Court notified the parties that the matter would be resolved on summary judgment grounds.

---

[4] Since the complaint was filed, Peterson has voluntarily dismissed one named defendant, the Estate of Brian Donnelly.  Donnelly was the Kalkaska County Prosecutor at the time of Peterson's criminal trial.  The complaint now includes ten counts or causes of action.  Counts 11 through 14 were brought against the Estate, which has been dismissed.

Peterson's first count alleges that all Defendants violated his Fifth and Fourteenth Amendment rights by conducting a coercive interrogation, individually, jointly, in conspiracy with one another, and consistent with the practices and policies of the Village and County.

Defendants all move to dismiss Count 1, arguing that the claim is precluded by collateral estoppel.

"It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). The preclusive effect is required by federal statute, 28 U.S.C. § 1738, which is an extension of the Full Faith and Credit Clause of the United States Constitution. *Hillman v. Shelby Cty.*, 297 F. App'x 450, 451 (6th Cir. 2008). This Court must determine what preclusive effect Michigan law would afford the determinations and judgment in the earlier state-court criminal action. *See Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrecoverable Trust Dated June 27, 2002*, 410 F.3d 304, 310 (6th Cir. 2005).

Under Michigan law, issue preclusion, also called collateral estoppel, precludes parties from relitigating issues when certain conditions are met. *Spectrum Health*, 410 F.3d at 310. To benefit from collateral estoppel, the moving party must prove: (1) the parties in both proceedings are the same or in privity, (2) there was a valid, final judgment in the first proceeding, (3) the same issue was actually litigated in the first proceeding, (4) that issue was necessary to the judgment, and (5) the party against whom preclusion is asserted (or its privity) had a full and fair opportunity to litigate the issue. *Id.* (citing *United States v. Dominguez*,

359 F.3d 839, 842 (6th Cir. 2004)).  The Michigan Supreme Court advanced the same criteria, albeit as three elements: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue, and (3) there must be mutuality of estoppel.  *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845–46 (Mich. 2004).  The third element, mutuality of estoppel, can be relaxed in certain situations.  Where a party has had a full and fair opportunity to litigate the issue, collateral estoppel may be asserted defensively in subsequent litigation, even though the party making the defensive assertion was not involved in the prior litigation.  *Id.* at 850; *see Gilbert v. Ferry*, 413 F.3d 578, 580-81 (6th Cir. 2005).  Michigan allows "crossover estoppel," which involves preclusion of an issue in a civil proceeding following a criminal proceeding, and vice versa.  *Barrow v. Pritchard*, 597 N.W.2d 853, 855-56 (Mich. Ct. App. 1999).

In these proceedings, the question is whether there exists a valid and final judgment.[5] *See Ashe v. Swenson*, 397 U.S. 436, 443 (1970) (Collateral estoppel "means simply that when an issue of ultimate fact has one been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."); *Leahy v. Orion Twp.*, 711 N.W.2d 438, 441 (Mich. Ct. App. 2006) ("Collateral estoppel bars relitigation of an issue in a new action . . . when the earlier proceeding resulted in a valid final judgment . . . .").  "Only final judgments, not surprisingly, possess issue-preclusive power[.]" *Kosinski v. Comm'r of Internal Revenue*, 541 F.3d 671, 676 (6th Cir. 2008).  "Collateral

---

[5]     Alternatively, Peterson argues that the voluntariness of his confession was not fully litigated.

estoppel applies only where the basis of the prior judgment can be ascertained clearly, definitively, and unequivocally." *People v. Gates*, 452 N.W.2d 627, 631 (Mich. 1990).

Because no valid and final judgment exists in Peterson's criminal case, collateral estoppel cannot preclude him from relitigating the issues raised in his criminal case. Judge Allen vacated the judgment of conviction against Peterson. Applying federal law, the Sixth Circuit has broadly held that a "judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel." *Erebia v. Chrysler Plastic Prods. Corp.*, 891 F.2d 1212, 1215 (6th Cir. 1989); *see Rayfield v. American Reliable Ins. Co.*, 641 F. App'x. 533, 538 (6th Cir. 2016) (involving collateral estoppel under Michigan law and quoting *Erebia* favorably); In *Dodrill v. Ludt*, 764 F.2d 442, 444 (6th Cir. 1985), a case involving Ohio law, the Sixth Circuit offered a practical justification for the "general rule" that when "a judgment is vacated, for whatever reason, [it] is deprived of its conclusive effect as collateral estoppel."[6] *Id.* (collecting cases).

> Any other rule would needlessly and astronomically proliferate the number of issues raised on appeal. If a judgment could be entirely vacated yet preclusive effect still given to issues determined at trial but not specifically appealed, appellants generally would feel compelled to appeal every contrary factual determination. Such inefficiency neither lawyers nor judges ought to court.

---

[6]     *Dodrill* is not binding on this Court, but it is persuasive. The circuit court's reasoning would apply to any state's collateral estoppel law. And, Ohio's collateral estoppel law is similar to Michigan's law. *See Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 985 (Ohio 1983) ("Accordingly, an absolute due process prerequisite to the application of collateral estoppel is that the party asserting preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action."); *Mitchell v. Int'l Flavors & Fragrances, Inc.*, 902 N.E.2d 37, 41 (Ohio Ct. App. 2008) ("This Court has held that collateral estoppel applies when (1) the party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous action after a full and fair opportunity to litigate the issue; (3) the issue was admitted or actually tried and decided and was necessary to the final judgment; and (4) the issue was identical to the issue involved in the new action.").

Litigants ought to be encouraged to expend their energies on their most compelling issues and arguments, without paranoia about the preclusive effect of other issues or determinations.

*Id.* At least two circuit courts have reached similar conclusions in federal civil lawsuits following the reversal of a state criminal conviction. *See Tillman v. Orange Cty., Florida*, 519 F. App'x 632, 637-38 (11th Cir. 2013) (holding that issues determined at the criminal trial had no preclusive effect because the conviction, verdict and sentence had been set aside entirely); *Aguillard v. McGowen*, 207 F.3d 226, 229 (5th Cir. 2000). There does not appear to be a Michigan court that has addressed this particular situation.

Defendants present two arguments to undermine application of the broad rule that when a judgment is vacated, all preclusive effects are eliminated. First, Defendants assert that a *Walker* hearing resolves only the question of voluntariness and not the ultimate question of guilt. The decision issued after a *Walker* hearing is a factual determination of voluntariness, on the merits, and is binding for the purpose of collateral estoppel. *People v. Gray*, 222 N.W.2d 515, 517 (Mich. 1974). Defendants conclude that vacating the judgment of conviction does not require the determination that a confession was voluntary also be set aside. Defendants point out that the trial court's voluntariness finding was not disturbed on appeal or as part of the 6.500 opinion and order.

Defendants' premises are all accurate, but do not require the conclusion that a defendant is precluded by collateral estoppel from relitigating the voluntariness of the confession. The same situation was true in *Dodrill*; the Sixth Circuit noted that the "conviction was reversed on grounds have no bearing on the validity of the fact-findings" which were the subject of the collateral estoppel issue. *Dodrill*, 764 F.2d at 444. The Sixth

Circuit addressed the lack of connection between the facts found and the reversal of the judgment by summarizing the practical justification for the general rule.  Courts, especially appellate courts, require litigants to carefully select those issues to be brought on appeal. Vacating or reversing the judgment, for any reason, eliminates the preclusive effect of the decisions made throughout the proceedings.  "*Any other rule* would needlessly and astronomically proliferate the number of issues raised on appeal." *Dodrill*, 764 F.2d at 444 (emphasis added); *see Evans v. City of Chicago*, No. 04C3570, 2006 WL 463041, at *15 (N.D. Ill. Jan. 6, 2006) (citing *Dodrill* and stating that if the general rule "were not the case, then appellants would be compelled to appeal every contrary determination, which would foster a Hydra-like judicial bottleneck.").

Second, Defendants rely on *Hatchett v. City of Detroit*, 495 F. App'x 567 (6th Cir. 2012), a case that in many ways is similar to Peterson's.  Nathaniel Hatchett was convicted of carjacking, armed robbery, kidnapping and criminal sexual conduct in a Michigan state court. Part of the case against him involved DNA testing.  Hatchett also confessed to the crime. During the criminal proceedings, Hatchett alleged that his confession was coerced, and the trial court held a *Walker* hearing.  The trial court found the confession was free and voluntary.

Ten years after he was convicted, lawyers with the Thomas M. Cooley Law School Innocence Project filed a motion for a new trial with the state trial court under Michigan's DNA testing statute, Michigan Compiled Laws § 770.16.  *Hatchett v. City of Detroit*, 714 F. Supp. 2d 708, 715 n.3 (E.D. Mich. 2010).  As part of the criminal investigation, DNA from the victim was compared to DNA from the victim's husband and the defendant.  Both men

were excluded as possible sources.   The results of the husband's DNA tests were not disclosed to defendant or his attorneys.   The husband as a possible source of the DNA was commented on in closing, and was mentioned by the Court of Appeals on direct appeal.   In the footnotes to his opinion, Judge Bernard Friedman explained what happened next.

> In his response to Hatchett's motion, the prosecutor indicated he "cannot reasonably oppose defendant's motion for a new trial" and "move[d] that the charges in this case be dismissed."   The "hearing disposition" dated April 14, 2008, does not indicate that a ruling on Hatchett's motion was made.   This document does state: "People's motion to dismiss charges granted."

*Id.* (internal citations omitted).   Contrary to what Hatchett asserted in his federal civil action, Judge Friedman stated that "[n]othing in the record suggests that the 'judgement of conviction was set aside,'" and further noted that "[u]nder Michigan law this would be accomplished by filing a motion for relief from judgment pursuant to MCR 6.502."   *Id.*

Following the dismissal of the charges, Hatchett filed a federal civil rights action.   Hatchett asserted, among other things, that his confession was coerced, which violated his constitutional rights.   The defendants argued that collateral estoppel precluded Hatchett from religating the voluntariness of his confession.   Judge Friedman agreed with the defendants and granted their motion.   The decision was affirmed on appeal.   *Hatchett v. City of Detroit*, 495 F. App'x 567 (6th Cir. 2012).   The circuit court summarily rejected Hatchett's argument that his conviction had been set aside, explaining that the argument conflated the determination of voluntariness with the determination of guilt.   *Id.* at 570–71.

This Court is not persuaded that Michigan courts would reach the same conclusion as the court did in *Hatchett.*   The opinion is not published.   The resolution of the matters

in the state court were procedurally problematic.[7]  None of the cases cited favorably by the federal trial court or the federal court of appeals involved a situation where collateral estoppel was applied in a civil case after a criminal conviction was vacated or reversed.[8]  Both the federal trial court and the Sixth Circuit resolved the collateral estoppel issue by finding that the *Walker* determination was not implicated by the manner in which the criminal charges were ultimately resolved.  If Hatchett's conviction had been vacated, that conclusion would not be consistent with the holdings in *Dodrill*, *Erebia*, or *Rayfield*.  Neither the parties nor this Court have found any other case where a criminal conviction was reversed or vacated and aspects of the underlying criminal action were given preclusive effect.  On the other hand, in addition *Tillman* and *Aguillard* cited above, district courts in this circuit have that found the opposite; where a conviction is vacated or reversed, the factual determinations in the underlying criminal action lost their preclusive effect.  *E.g., Booker v. LaPaglia*, No. 3:11-cv-126, 2014 WL 4259474, at *7 (E.D. Tenn. Aug. 28, 2014) (citing *Dodrill* and *Erebia*) *rev'd on qualified immunity grounds.*  617 F. App'x 520 (6th Cir. 2015).

The Court briefly discusses two cases where confessions were challenged as part of the state court criminal proceedings, and where federal trial courts declined to give preclusive

---

[7]      For example, it is not clear how the prosecutor can dismiss charges after a conviction and judgment have been rendered and years of the sentence served.  As a prerequisite for dismissing the charges, the motion for a new trial would have to be granted first.  This was not done on the record presented to the federal district court.  Under the Michigan Rules of Court, 6.431(B), a court may grant a motion for a new trial "on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice."

[8]      *Coogan v. City of Wixom*, 820 F.2d 170 (6th Cir. 1987), a case cited favorably by Defendants, does not involve a situation where the judgment was vacated or reversed.  The issue in federal circuit court was the preclusive effect of a probable cause hearing in the Michigan district court, the results of which were affirmed by a Michigan circuit court.  Later, the charges were dismissed because the state's speedy trial requirements were not met.

effects to those determinations after the conviction was vacated.  First, in *Chandler v. Louisville Jefferson Cty. Metro Gov't*, No. 2011 WL 781183, at *2 (W.D. Ky. Mar. 1, 2011), the plaintiff also raised claims that a confession was coerced.  His prior conviction had been upheld, even on an appeal of his habeas petition at the Sixth Circuit.  The state trial court later set aside the conviction because Chandler was actually innocent.  In the federal civil rights case, the judge declined to give any preclusive effect to the determination that the confession was not coerced, even though the issue had been reviewed as part of the federal habeas proceedings.  *Id.* (explaining that the judges "reviewed the state court findings and rulings which are now literally banished to judicial netherland.").

Second, in *Thomas v. Riddle*, 673 F. Supp. 262 (N.D. Ill. 1987), the criminal defendant was arrested after what was later determined to be an illegal arrest.  He was then interrogated and confessed.  He filed a motion to suppress alleging, among other things, that his confession was the result of threats and physical abuse.  The state trial court found that the confession was "sufficiently attenuated from the illegal arrest" and declined to suppress the confession.  *Id.* at 265.  The trial court also found that none of the officers threatened Thomas.  *Id.*  Thomas was convicted and, on appeal, the state court of appeals found the "attenuation" was "contrary to the manifest weight of the evidence," reversed the judgment, and remanded for a new trial.  *Id.*

In the ensuing federal civil rights lawsuit, the defendants raised collateral estoppel as a defense to Thomas's claims that his constitutional rights were violated when he was threatened and abused while in custody.  The federal district court declined to dismiss the claims on collateral estoppel grounds.  Applying Illinois law, the court noted that when a

judgment is affirmed on one ground, and the reviewing court declines to rule on other grounds as unnecessary, those other grounds are not entitled to collateral estoppel. *Id.* at 265–66. The court concluded the same outcome should occur when the judgment is reversed on one ground, and the court declines to address the other grounds. *Id.* The court also distinguished situations where a judgment is reversed on a single ground and remanded to the trial court. In those situations, the unreversed determinations are adhered to under the law of the case doctrine, not collateral estoppel. *Id.* The court concluded that when a judgment has been vacated, reversed or set aside on appeal, that judgment "is thereby deprived of all conclusive effect, both as to res judicata and as to collateral estoppel." *Id.* (citing 1B *Moores Federal Practice* ¶ 0.416 (2d ed. 1984)); *accord Tankleff v. Cty. of Suffolk*, No. 09-cv-1207, 2010 WL 5341929, at *4–5 (E.D.N.Y. Dec. 21, 2010) (denying collateral estoppel effect to the allegation in a civil case that a confession was coerced when that issue was litigated in the criminal proceedings and the conviction was subsequently vacated); *Latta v. Chapala*, No. 2:03-cv-41, 2005 WL 2786999, at *12 (N.D. Ind. Oct. 25, 2005) (denying collateral estoppel to the allegation in a civil case that statements made during an interrogation were not voluntary when that issue was litigated and resolved against the civil plaintiffs in their criminal lawsuit because the Supreme Court of Indiana reversed the denial of post-conviction relief, even though the reversal was on other grounds).

Because Peterson's judgment of conviction has been vacated, all of the factual findings made during his criminal prosecution have lost their preclusive effect. Accordingly, Defendants' collateral estoppel argument is denied.

IV.

When the events giving rise to this lawsuit occurred, Somers and Uribe were employed by the Michigan State Police (MSP Defendants). MSP Defendants assert Peterson has failed to plead sufficient facts to support several of his claims against them. For these issues, the Court has considered only the pleadings. Although these two defendants were involved in the investigation in distinct ways, in this motion, MSP Defendants address the pleadings without making any distinction between them or their actions. The Court will do the same.

A. Fabricated Evidence/Witholding Evidence

As part of Count 2, Peterson's claim for violation of Due Process, he alleges that Defendants fabricated false reports and other evidence and withheld exculpatory or impeachment evidence. (Compl. ¶ 78.) MSP Defendants argue any claim arising from fabricated evidence should be dismissed because the complaint fails to identify the evidence that was fabricated, and the complaint fails to identify any evidence that was withheld.

Peterson's complaint provides sufficient information to put MSP Defendants on notice of the claims against them for fabricating evidence and withholding evidence. Peterson largely complains of the manner in which the interrogations were conducted, and how the results of the interrogations were reported to the prosecutors. In paragraph 54 of the complaint, Peterson pleads that Defendants fabricated claims that he volunteered information about the crime. In paragraph 78 Peterson pleads that Defendants failed to report all exculpatory evidence to the prosecuting attorney.

### B.  Conspiracy

Also as part of Count 2, Peterson claims Defendants were part of a conspiracy to violate his rights.  MSP Defendants argue that Peterson failed to plead a conspiracy with the necessary specificity.  Conspiracy claims brought under § 1983 "must be pled with some degree of specificity."  *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).  To establish a conspiracy, a plaintiff must show

> An agreement between two or more persons to injure another by unlawful action.  Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  Each conspirator need not have known all the details of the illegal plan or all of the participants involved.  All that must be shown is that there was a single plan, that the alleged conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the defendant.

*Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore*, 330 F.3d at 854).

Peterson's allegations are sufficient to put MSP Defendants on notice of the conspiracy claim against them.  Peterson alleges Defendants conspired and coerced him to falsely incriminate himself.  (Compl. ¶ 66.)  Uribe's involvement in the conspiracy, as the operator of the polygraph, is summarized in paragraphs 33 through 37.  Somers was actively involved with the interrogation and questioning.

### C. Failure to Intervene

In Count 3, Peterson alleges Defendants generally failed to intervene as his constitutional rights were being violated.  MSP Defendants argue Peterson has pleaded the Somers and Uribe worked together to get him to confess, which is insufficient to state a claim

for failure to intervene.  For a failure to intervene claim, a plaintiff must prove that defendant knew or had reason to know that the plaintiff's constitutional rights were being violated and (2) the defendant had the opportunity and means to prevent the constitutional violation from occurring.  *See Burley v. Gagacki*, 729 F.3d 610, 620 (6th Cir. 2013).

Peterson's allegations are sufficient to put **MSP Defendants** on notice of the failure to intervene claim against them.  Peterson pleads that one or more the defendants stood by while his constitutional rights were being violated and those defendants had the opportunity to intervene, but did not.  (Comp. ¶ 88.)  Participation in the alleged constitutional violations and a failure to intervene claim are functionally alternative theories; a single defendant could not be liable for both.  *See, e.g., Burley*, 729 F.3d at 622; *Buchy v. City of White Plains*, No. 14 cv 1806, 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015).

### D.  Qualified Immunity

**MSP Defendants** argue they are entitled to qualified immunity.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is a legal question for the court to resolve. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (citing *Elder v. Holloway*, 501 U.S. 510, 516 (1994)).  When resolving a governmental employee's assertion of qualified immunity, the court determines (1) whether the facts the plaintiff has alleged or shown establishes the violation of a constitutional right, and (2) whether the right at issue was clearly established at

the time of the incident. *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 567 (6th Cir. 2013) (citing *Pearson v. Callahan* 555 U.S. 223, 232 (2009)).

Once the qualified immunity defense is raised, the plaintiff bears the burden of demonstrating both that the challenged conduct violates a constitutional or statutory right and that the right was so clearly established at the time that "'every reasonable officer would have understood that what he [was] doing violate[d] that right.'" *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In determining whether a law is clearly established, ordinarily this Court looks to decisions of the Supreme Court and the Sixth Circuit. *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007); *see Andrews v. Hickman Cty., Tennessee*, 700 F.3d 845, 853 (6th Cir. 2012) ("When determining whether a constitutional right is clearly established, we look first to the decisions of the Supreme Court, then to our own decisions and those of other courts within the circuit, and then to decisions of other Courts of Appeals."). Although a prior case need not be directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. The clearly established prong will depend "substantially" on the level of generality at which the legal rule is identified. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The right must be clearly established in a particularized sense, and not at a general or abstract sense. *Id.* at 640. "The contours of

the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (internal citation and citations omitted).  "This standard requires the courts to examine the asserted right at a relatively high level of specificity and on a fact-specific, case-by-case basis." *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011) (edits omitted) (quoting *Cope v. Heltsley*, 128 F.3d 452, 458-59 (6th Cir. 1997)).

MSP Defendants assert two bases for qualified immunity against Peteerson's coerced confession claim (Count 1) and Due Process claim (Count 2).  First, MSP Defendants argue that the voluntariness of Peterson's confessions have already been litigated and resolved against him.  That argument is not functionally different than the collateral estoppel argument.  Because the judgement has been set aside, those judicial determinations have also been set aside and are not entitled to any weight.  Second, MSP Defendants contend that the manner in which Peterson was treated does not "shock the conscience."

Generally, the Due Process Clause of Fourteenth Amendment prevents states from violating the rights enumerated in the first eight Amendments to our federal constitution, including the right against self-incrimination under the Fifth Amendment. *See Duncan v. Louisiana*, 391 U.S. 145, 147–48 (1968).  For a claim brought under the Fifth Amendment against a state, the plaintiff must show that his or her confession was not voluntary; the confession must not be extracted by any sort of threat or violence, nor obtained by direct or implied promise, or by the exertion of any improper influence. *Mallory v. Hogan,* 378 U.S.

1, 7 (1964). In this circuit, the court must determine whether, under the totality of the circumstances, "the free will of the defendant was overborne." *United States v. Alsante*, 812 F.3d 544, 548 (6th Cir. 2016 (quoting *United States v. Washington*, 431 U.S. 181, 188 (1977)); *see Schneckloth v. Bustamonte*, 412 U.S. 218, 225–27 (1973). The violation occurs when the statement by the criminal defendant is used against him or her at trial. *Chavez v. Martinez*, 538 U.S. 760, 766–67 (2003).

Fourteenth Amendment Due Process claims are evaluated under a higher standard; the court considers whether the defendants' conduct "shocks the conscience." *Chavez*, 538 U.S. at 774; *see, e.g., Smith v. Patterson*, 430 F. App'x 438, 442 (6th Cir. 2011) (noting the different standards). The United States Supreme Court has "long held that certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). With that guidance, "tactics for eliciting inculpatory statements must fall within the broad constitutional boundaries imposed by the Fourteenth Amendment's guarantee of fundamental fairness." *Id.* at 110. The inquiry requires the Court to consider the totality of the circumstances, including both the characteristics of the accused and the details of the interrogation. *Schneckloth*, 412 U.S. at 226.

On the allegations in the complaint, MSP Defendants are not entitled to qualified immunity for either the Fifth Amendment claim for the Fourteenth Amendment claim arising from the interrogation and use of the confession. First, MSP Defendants have not advanced a qualified immunity defense against Peterson's Fifth Amendment claim. MSP

Defendants have only advanced the theory that their conduct employed classic interrogation techniques, which do not shock the conscience.  Second, MSP Defendants have overlooked or ignored Peterson's allegations about his mental and emotional stability at the time of his interrogation; he was a 22-year old, brain-damaged individual suffering from mental illness, and who was severely depressed and on suicide watch while incarcerated in the Kalkaska Country Jail on an unrelated charge.  (Compl. ¶ 29.)  Because MSP Defendants have not taken those allegations into consideration, they have not asked the Court to consider the "totality of the circumstances."  And, the single case MSP Defendants have identified as analogous, *Smith v. Patterson*, is not.

### E.  Governmental Immunity

MSP Defendants argue they are entitled to governmental immunity from intentional torts.  In Michigan, the Government Tort Liability Act, Michigan Compiled Laws §§ 691.1401 *et seq.*, provides that government employees have immunity when they are engaged in the exercise of a government function, unless the plaintiff establishes a statutory exception to that immunity.  *Odom v. Wayne Cty.*, 760 N.W.2d 217, 227 (Mich. 2008).  To overcome governmental immunity, a plaintiff must establish either that the defendant's actions fell within a statutory exception or that the defendant's actions occurred outside the exercise of a governmental function.  *Genesee Cty. Drain Comm'r v. Genesee Cty.*, 869 N.W.2d 635, 642 (Mich. Ct. App. 2015).  When considering the latter, courts examine the "*general activity* involved rather than the *specific conduct* engaged in when the alleged injury occurred." *Id.* (quoting *Ward v. Michigan State Univ. (On Remand)*, 782 N.W.2d 514, 519 (Mich. Ct. App. 2010) (emphasis added) (emphasis added in *Genesee County*).  The statute does not

include an exception for intentional torts. *Genesee Cty.*, 869 N.W.2d at 642 (citation omitted). The statute does contain an exception for acts amounting to gross negligence. *See* Mich. Comp. Laws § 691.1407(2)(c); *Yoches v. City of Dearborn*, --N.W.2d--, 2017 WL 2989063, at *5 (Mich. Ct. App. July 13, 2017).

Governmental immunity is an affirmative defense that must be raised and established by the defendant. To be entitled to immunity, the defendant must show that his or her acts were (1) undertaken during the course of employment and that he or she was acting, or reasonably believed he or she was acting in the scope of authority, (2) were undertaken in good faith, and (3) were discretionary, not ministerial, in nature. *Odom*, 760 N.W.2d at 218. Generally, affirmative defenses must be raised as a motion for summary judgment because the defendant bears the burden of proof and must present evidence to support the defense. *See, e.g., Jones v. Bock*, 549 U.S. 199, 204 (2007) (noting that a defendant must plead and prove an affirmative defense). When, however, the allegations in the complaint establishes the facts necessary for the affirmative defense, a motion to dismiss raising the defense may be granted. *See Estate of Barney v. PNC Bank*, 714 F.3d 920, 926 (6th Cir. 2013).

At this stage in the proceeding, MSP Defendants are not entitled to governmental immunity. This motion was filed as one based on the pleadings. Because governmental immunity is an affirmative defense, MSP Defendants bear the burden of proving all of the facts necessary to that defense. Peterson has asserted that MSP Defendants fabricated evidence and coerced a false confession. Taken as true, those acts likely fall outside the scope of employment for the MSP Defendants. Taken as true, those acts would not have been taken good faith. Therefore, if those allegations are taken as true, the defense would

fail.  Although this Court notified the parties that the motions would be converted to motions for summary judgment, no defendant supplemented the record to support a claim for governmental immunity.  Accordingly, the Court does not consider this defense ripe for resolution.

### F.  Malicious Prosecution

MSP Defendants request the Court dismiss the malicious prosecution claim because it arises from their testimony in a judicial proceeding.  "All witnesses—police officers as well as lay witnesses—are absolutely immune from civil liability based on their trial testimony in judicial proceedings."  *Moldowan v. City of Warren*, 578 F.3d 351, 390 (6th Cir. 2009).

MSP Defendants are not entitled to dismissal of either the federal or state malicious prosecution claim.  Peterson argues that his claim does not arise from testimony at a judicial proceeding.

### G.  Statute of Limitations

MSP Defendants argue the statute of limitations bars Peterson's state law claims for intentional infliction of emotional distress and for civil conspiracy, Counts 6 and 8.  The statute of limitations for these two claims is three years.  *See* Mich. Comp. Laws § 600.5805(10); *Terlecki v. Stewart*, 754 N.W.2d 899, 906 (Mich. Ct. App. 2008) (civil conspiracy); *Nelson v. Ho*, 564 N.W.2d 482, 487 (Mich. Ct. App. 1997).  This issue requires the Court to determine whether the claims could have been brought when the conduct occurred.  If yes, then the claims are time barred.  If, however, Peterson's conviction prevented him from bringing the claims, then the claims would not be time barred.

A claim accrues when the act upon which the claim is based was done, not when the damage occurs. Mich. Comp. Laws § 600.5827; *Nelson*, 564 N.W.2d at 487. A limitations period does not begin to run until the plaintiff "has a 'complete and present cause of action.'" *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc.*, 522 U.S. 192, 195 (1997) (quoting *Rawlings v. Ray*, 312 U.S 96, 98 (1941)). "[A]s a general rule, a limitation period is tolled only by a substantive restriction on the plaintiff's ability to bring an action in a timely manner, not by mere procedural or technical irregularities whose correction is within the control of the plaintiff." *Turner v. Mercy Hosp. & Health Servs. of Detroit*, 533 N.W.2d 365, 368 (Mich. Ct. App. 1995) (citation omitted).

MSP Defendants are not entitled to dismissal of the claims as time barred. Peterson explains that his intentional infliction of emotional distress claim "is a predicate for the civil conspiracy claim." (ECF No. 46 Pl. Resp. at 30 n.8 PageID.839.) The conduct giving rise to Peterson's intentional infliction claim is the defendants' allegedly coercive interrogation and alleged fabrication of evidence. Peterson could not raise these claims before his conviction was vacated. He had already filed motions in his criminal case challenging the voluntariness of his confession. That matter was resolved against him. To find that his confession was voluntary, the court had to consider the conduct of MSP Defendants during the interrogation. Peterson would have been estopped from relitigating that issue in a civil case. Until the conviction was vacated, Peterson was operating under a substantive restriction that prevented him from litigating these two state torts.

V.

Defendants David Heymes and the Village of Kalkaska (Village Defendants) filed a motion to dismiss.  At the time of the events giving rise to Peterson's claims, Defendant Heymes was an officer employed by the Kalkaska Police Department.  Most of the Village Defendants' arguments overlap with the arguments raised by MSP Defendants.

A.  Fabrication and Withholding of Evidence / Civil Conspiracy / Failure to Intervene

Village Defendants argue Peterson has failed to plead sufficient facts to support these claims in Counts 2 through 8.  Generally, Village Defendants make the same assertions MSP Defendants made for dismissal of these claims.

Village Defendants are not entitled to dismissal of Peterson's claims for fabricating and withholding evidence, for civil conspiracy and for failing to intervene.  As explained above, the complaint sets forth sufficient facts to put Village Defendants on notice that these claims are brought against them.

B.  *Monell* Liability

Village Defendants argue the complaint fails to state a municipal liability claim against the Village.  A municipality cannot be held liable for the acts of its employees under a theory of respondeat superior.  *Baynes v. Cleland*, 799 F.3d 600, 620 (6th Cir. 2015).  A municipal can be held liable under § 1983 when the municipality is responsible for the constitutional violation because of its official policy or custom.  *Id.*  To survive a motion to dismiss a municipal liability claim, a plaintiff must plead (1) the violation of a federal right, (2) the defendants acted under color of state law, and (3) the municipality's policy or custom caused the violation to occur.  *Bright v. Gallia Cty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014).  A

plaintiff can establish a municipal liability claim by identifying the cause of the injury as (1) the municipality's legislative enactments or official policies, (2) actions taken by officials with final decision-making authority, (3) a policy of inadequate training or supervision, or (4) a custom of tolerance or acquiescence of constitutional violations. *Baynes*, 799 F.3d at 621. Village Defendants assert that the complaint fails to allege, describe, or otherwise identify the custom or policy behind Heymes's actions. They also assert that the complaint alleges a single incident.

Village Defendants are not entitled to dismissal of the *Monell* municipal liability claim. The complaint satisfies the pleading standard and Village Defendants have been put on notice of the claims against them. Municipal liability claims need not be pled with particularity. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168–69 (1993). Peterson will ultimately need to prove municipal liability based on one of the four avenues identified above. At this stage in the litigation, he need only plead the existence of a policy or custom, which he has done.

### C. Malicious Prosecution

Village Defendants argue the malicious prosecution claims should be dismissed because Heymes has testimonial immunity.

Village Defendants are not entitled to dismissal of the malicious prosecution claims. As discussed above, Peterson explains that his claim does not arise from Heymes's testimony.

### D.  Qualified Immunity

Village Defendants argue Defendant Heymes is entitled to qualified immunity. Village Defendants largely repeat the same arguments advanced by the MSP Defendants.

Defendant Heymes is not entitled to qualified immunity.  Like MSP Defendants, Village Defendants have not considered the characteristics of the accused.  The totality of the circumstances standard for considering interrogations and confessions applies at all stages of the litigation.  Village Defendants cannot ignore Peterson's mental and emotional states and prevail on the arguments advanced in their motion, which focus exclusively on the interrogation techniques that were employed.

### E.  Governmental Immunity

Village Defendants argue Defendant Heymes is entitled to governmental immunity for Peterson's state law claims.

Defendant Heymes is not entitled to dismissal of the state law claims on the basis of governmental immunity.  As pled, Heymes was not acting within the scope of his employment.  As explained above, governmental immunity is an affirmative defense and Heymes will bear the burden of proving that he is entitled to immunity.

### VI.

Defendants David Israel and the County of Kalkaska (County Defendants) filed a motion to dismiss.  At the time of the events giving rise to Peterson's claims, Defendant Israel was a deputy with the Kalkaska County Sheriff's Department.

County Defendants are not entitled to dismissal of any of the claims in Peterson's complaint.  All of the arguments raised by County Defendants were also raised by MSP

Defendants or Village Defendants.   The same factual pleadings, legal authority, and reasoning applies and requires the same outcome.

## VII.

Defendants all filed motions to dismiss, which the Court converted to motions for summary judgment.   Defendants' collateral estoppel argument fails because Peterson's conviction was vacated.   Defendants have not identified any authority where a plaintiff in a civil suit was collaterally estopped from relitigating issues when the underlying conviction was vacated or reversed.   Because Peterson's conviction and judgment have been vacated, he is not collaterally estopped from relitigating the voluntariness of his confession.

The other issues raised by Defendants generally allege that the pleadings are factually deficient.   The Court disagrees.   The factual allegations are sufficient to put Defendants on notice of the claims against them.   The allegations in the complaint do not establish the factual basis for the affirmative defenses asserted by Defendants, who will have to plead and prove those affirmative defenses.

Therefore, the motions are denied.

## ORDER

For the reasons provided in the accompanying Opinion, Defendants' motions to dismiss, which have been converted to motions for summary judgment (ECF Nos. 34, 39 and 40) are **DENIED.**

**IT IS SO ORDERED.**

Date:   September 29, 2017                           /s/ Paul L. Maloney
                                                                     Paul L. Maloney
                                                                     United States District Judge