**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JAMES L. PETERSON, on behalf )
of JAMIE PETERSON, a legally ) Case No. 1:15-cv-00969
incapacitated individual, )
)
      Plaintiff, ) Hon. Paul L. Maloney
)
v. )
)
DAVID HEYMES, VILLAGE OF KALKASKA, )
GREG SOMERS, MARK URIBE, DAVID )
ISRAEL, BRUCE DONNELLY, COUNTY OF )
KALKASKA, UNNAMED OFFICERS OF THE )
MICHIGAN STATE POLICE, and UNNAMED )
OFFICERS OF THE KALKASKA POLICE )
DEPARTMENT, )
)
     Defendants. )

**PLAINTIFF'S AGREED MOTION FOR
APPROVAL OF SETTLEMENT INVOLVING A LEGALLY
INCAPACITATED INDIVIDUAL**

   Pursuant to Michigan Court Rule 2.420, Federal Rule of Civil Procedure 17.1, and other

authorities cited below, Plaintiff respectfully moves this Court for entry of an Order approving

the settlement entered into between Plaintiff, a legally incapacitated individual, and defendants

David Heymes and the Village of Kalkaska ("Settling Defendants"). A proposed Order is

attached hereto in Appendix 1.  In support of the motion, Plaintiff states as follows:

**I.  INTRODUCTION**

   Plaintiff Jamie Peterson and Defendants David Heymes and the Village of Kalkaska

reached a settlement of Plaintiff's claims against those two defendants on May 23, 2018, in the

amount of $525,000. The parties have agreed upon the language of a written settlement

agreement, a copy of which is attached as Appendix 2.

1

Because the Plaintiff in this case is a "legally incapacitated individual," the settlement requires Court approval prior to payout. *See* Michigan Court Rule ("MCR") 2.420. Plaintiff's father, James L. Peterson (hereinafter "Guardian"), was appointed his full guardian by the Honorable Judge Lynne M. Buday of the State of Michigan Probate Court, County of Kalkaska. The Guardian has acted on Plaintiff's behalf throughout this litigation and during all settlement negotiations.

In order to protect the interests of Jamie Peterson, a legally incapacitated individual, a special needs trust will be opened on his behalf through the Michigan state courts. The Guardian has retained separate counsel for the probate proceedings, who will present the petition to open a special needs trust on September 25, 2018. The opening of a special needs trust will ensure that Mr. Peterson's settlement in this case will be managed appropriately and in a manner that is protective of Mr. Peterson's financial and medical interests.

## II.    APPLICABLE LAW

Settlements made on behalf of legally incapacitated individuals in Michigan are governed by MCR 2.420. Once an action has commenced, Subsection B of MCR 2.420 expressly provides: "In actions covered by this rule, a proposed consent judgment, settlement, or dismissal pursuant to settlement must be brought before the judge to whom the action is assigned and the judge shall pass on the fairness of the proposal." MCR 2.420(B). Accordingly, the court in which the action has been commenced "must approve or reject a proposed settlement." *Peterson v. Auto Owners Ins. Co.*, 274 Mich. App. 407, 415 (2007).

Federal district courts have authority to approve the settlements of a legally incapacitated individual's claims that are litigated in federal court. *Knight-Stanner v. Pruitt*, No. 1:08-CV-949, 2010 WL 432424, at *1 (W.D. Mich. Jan. 26, 2010) ("District courts have discretion to approve

settlements in actions before them." *citing Rusiecki v. City of Marquette,* 64 F. App'x 936, 937 (6th Cir. 2003)). Moreover, "[d]istrict courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interest of litigants who are [legally incapacitated]." *Oliva v. United States*, No. 1:15-CV-1060, 2016 WL 7665536, at *2 (W.D. Mich. Dec. 22, 2016), *report and recommendation adopted*, No. 1:15-CV-1060, 2017 WL 76914 (W.D. Mich. Jan. 9, 2017) (*quoting Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011)). The "[f]airness of the settlement must be determined by the trial court in every case . . . . [S]ince [legally incapacitated individuals] are unable to care for themselves, they deserve the court's protection." *Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 673 (6th Cir. 1988) (*quoting Centala v. Navrude*, 30 Mich. App. 30, 32–33 (1971)). The protections for legally incompetent individuals mirror those afforded to minors. *See Centala* 30 Mich. App. at 32–33 (In determining the fairness of a settlement, whether a plaintiff "is an adult incompetent rather than a minor . . . presents no distinction."); *see also* MCR 2.420.

   In the context of proposed settlements involving a legally incompetent plaintiff, a district court is required to "ma[k]e an independent determination that the settlement [i]s in the [plaintiff's] best interest." *Oliva*, 2016 WL 7665536, at *2 (*quoting Green v. Nevers*, 111 F.3d 1295, 1302 (6th Cir. 1997)). The determination of whether the settlement is appropriate must be made in the best interest of the individual. Looking to the applicable Michigan state rules for guidance, "the court should consider the age and life expectancy and current and anticipated financial needs of the . . . individual, any income and estate tax implications, any impact on eligibility for government benefits, and the present value of the proposed payment arrangement." MCR 2.420 (STAFF COMMENT, 2002 AM.). As part of this analysis, a court also determines

whether the attorney's fees and costs are "fair and reasonable." *Oliva*, 2016 WL 7665536, at *3 (*quoting Dean*, 860 F.2d at 673).

## III. BACKGROUND TO SETTLEMENT

Jamie Lee Peterson spent 17 years in prison for a rape and murder he did not commit. Plaintiff is an innocent man who has been fully exonerated for this crime through DNA evidence. His innocence was recently adjudicated under Michigan's Wrongful Imprisonment Compensation Act (hereinafter, "WICA proceeding"), and the Michigan Court of Claims ruled that he did not commit the acts for which he was imprisoned. *See* 7/5/2018 Order, attached hereto as Exhibit 3.

Plaintiff filed an action under 42 U.S.C. § 1983 against defendants, including the Settling Defendants, in this Court seeking redress for his wrongful conviction and lengthy incarceration. Plaintiff claims that, among other things, he was coerced into confessing to the crimes by defendants in violation of the 5th and 14th Amendments. Plaintiff further asserted *Brady*, conspiracy, and failure to intervene claims, as well as related state law claims.

Plaintiff alleged that in response to extreme psychological pressure and manipulation by one or more defendant investigators during a series of custodial interrogations beginning in February 1997, he "confessed" to the rape and murder of a 68-year-old woman in Kalkaska in October 1996. At the time, Plaintiff was a brain-damaged 22-year-old on suicide watch in Kalkaska County Jail on an unrelated charge. Plaintiff further alleged that one or more defendants withheld exculpatory evidence that would have undermined the credibility of his "confessions" and fabricated false reports and other evidence against him. Plaintiff alleged the individual defendants conspired during the investigation to convict Plaintiff despite his innocence, and that each individual defendant personally violated his constitutional rights.

4

Finally, Plaintiff alleged *Monell* liability against the County of Kalkaska. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). As a result of these alleged violations, Plaintiff was wrongfully convicted of rape and murder, and spent 17 years in prison. Plaintiff alleged he suffered damages, including loss of liberty, physical injury and sickness, and emotional pain and suffering.

Settling Defendants deny all wrongdoing, deny they used improper tactics to coerce a confession from Plaintiff, withheld exculpatory evidence or fabricated evidence, conspired to convict Plaintiff and deny that the County of Kalkaska is liable for Plaintiff's alleged constitutional injuries.

Jamie Peterson filed this action on September 9, 2015. In the almost three years since, the parties have engaged in initial discovery and have hotly litigated certain threshold legal issues, including collateral estoppel and qualified immunity. After several rounds of briefing and argument, this Court denied the Defendants' motions to dismiss. Those issues are now on appeal to the Sixth Circuit Court of Appeals (the status of which is that the appeal is fully briefed and argument will be held on October 4). The Settling Defendants and Plaintiff parties reached this settlement on May 23, 2018. Plaintiff's case will move forward to against other defendants.

## IV.   PROPOSED SETTLEMENT

### A.  The Settlement Terms

Under the terms of the settlement, the insurer of Defendants Heymes and the Village of Kalkaska will pay $525,000, inclusive of damages and attorney's fees and costs, in exchange for Plaintiff's dismissal of the Settling Defendants. The proposed settlement disposes of all claims as to Defendants Heymes and the Village of Kalkaska in their official and individual capacities from Plaintiff's § 1983 civil rights lawsuit. In addition to providing Mr. Peterson with substantial

compensation for his injuries now, this settlement allows him to proceed on all of his claims against Defendant Somers (the lead detective in the Montgomery investigation), as well as Defendant Israel (who participated in his interrogation) and the County of Kalkaska. In other words, Plaintiff hopes that $525,000 will not be his total recovery for 17 years of wrongful imprisonment, but rather, represents only a portion of damages, which he may use now without waiting for the litigation to conclude.

The settlement proceeds will be paid into a Special Needs Trust intended to protect the best interest of Plaintiff, ensure the longevity of these settlement proceedings, and protect his public benefits, including Medicaid and SSI.[1] The settlement is fair and in the best interests of Jamie Peterson.

### B. Attorney's Fees and Costs

The total share of the settlement allocated to Plaintiff's attorney's fees and costs is $235,220.78. Plaintiff is represented by Loevy & Loevy, which accepted Plaintiff's case on a contingent fee basis. The contingency fee of $210,000 represents 40 percent, pursuant to the retainer agreement. In addition, Plaintiff incurred $25,220.78 in actual litigation costs (see Exhibit 4), which counsel advanced. The aforementioned attorneys' fees and costs are fair and reasonable. Plaintiff will net $289,779.22.

The work performed by Plaintiff's attorneys warrants the agreed upon fees and costs. Loevy & Loevy is located in Chicago and the agreement is "consistent with the market in the Northern District of Illinois." *Sanchez v. Roka Akor Chicago LLC*, No. 14-CV-4645, 2017 WL 1425837, at *6 (N.D. Ill. Apr. 20, 2017) (A "request for effectively 39.5% of the common fund"

---

[1] Subsection B(5) of MCR 2.420 requires that: "If a settlement or judgment provides for the creation of a trust for the minor or legally incapacitated individual, the circuit court shall determine the amount to be paid to the trust, but the trust shall not be funded without prior approval of the trust by the probate court pursuant to notice to all interested persons and a hearing." MCR 2.420 (B)(5). Here, the creation of a trust is not a condition of the federal settlement. Plaintiff is separately filing the necessary pleadings in state court to obtain approval of the trust.

was reasonable.); *see In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) (The "usual range for contingent fees is between 33 and 50 percent." (*quoting Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992)*, as amended on denial of reh'g* (May 22, 1992)); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."). "Because [contingent-fee contracts] shift part of the risk of loss from client to lawyer, [they] usually yield a larger fee in a successful case than an hourly fee would." *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("The typical contingent fee is between 33 and 40 percent").

Michigan courts agree that "a normal 33 ⅓% or 40% contingency fee arrangement in most cases might be deemed reasonable" and have approved arrangements where attorney fees are within that range. *Rio Hair Naturalizer Prod. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *20 (E.D. Mich. Dec. 20, 1996); *see Miller v. Molette*, No. 235575, 2003 WL 21186587, at *1 (Mich. Ct. App. May 20, 2003) (settlement of $85,000, of which $55,902.60 went to plaintiff's estate and the rest, approximately 35 percent, covered attorney fees and costs, was approved); Brief on Behalf of Defendant-Appellees, *Stanke, ex rel. Isabella Bank & Tr. v. Stanke*, No. 263446, 2008 WL 216071, at *1 (Mich. Ct. App. Jan. 24, 2008) (court approved settlement where a minor netted $262,981.72 from the $400,000 settlement after the contingency fee (about 35 percent)).

Here, the allocated attorneys' fees reflect the substantial risks that Plaintiff's counsel have assumed in taking Plaintiff's case, which involves complex legal and factual issues. Plaintiff's counsel bear all the risks in such a case and receive nothing if they are ultimately unsuccessful. The foregoing authorities also provide ample support for this contingency amount.

WHEREFORE, the parties respectfully request that the Court enter the proposed Order attached hereto as <u>Appendix 1</u> and grant any other or further relief that the Court deems just.

**Respectfully submitted,**

**JAMIE PETERSON**

<u>/s Roshna Bala Keen</u>

Jon Loevy
Gayle Horn
Roshna Bala Keen
Loevy & Loevy
311 N. Aberdeen St., Third Floor
Chicago, Illinois 60607
Telephone: (312) 243-5900
Email: roshna@loevy.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| JAMES L. PETERSON, on behalf of JAMIE PETERSON, a legally incapacitated individual,    ) ) ) | Case No. 1:15-cv-00969 |
|           Plaintiff,     ) ) ) | Hon. Paul L. Maloney |
| v.          ) ) | |
| DAVID HEYMES, VILLAGE OF KALKASKA, GREG SOMERS, MARK URIBE, DAVID ISRAEL, BRUCE DONNELLY, COUNTY OF KALKASKA, UNNAMED OFFICERS OF THE MICHIGAN STATE POLICE, and UNNAMED OFFICERS OF THE KALKASKA POLICE DEPARTMENT,    ) ) ) ) ) ) ) ) | |
|          Defendants.    ) ) | |

### [PROPOSED] ORDER

This cause coming before the Court on Plaintiff's Agreed Motion for Approval of Settlement involving a Legally Incapacitated Person, the Court hereby orders that:

(1) The settlement reached between Plaintiff and Defendants David Heymes and the Village of Kalkaska is in the best interest of Plaintiff;

(2) The attorneys' fees and costs as described in the Plaintiff's Agreed Motion are fair and reasonable;

(3) The settlement is hereby approved.

SO ORDERED,

_____

Hon. Paul L. Maloney

Appendix 1

## SETTLEMENT AND RELEASE OF ALL CLAIMS

This Agreement shall not be construed to be an admission of any liability by Defendants, DAVID HEYMES and THE VILLAGE OF KALKASKA, their agents, subsidiaries, attorneys, officers, employees, servants, insurers, representatives, trustees, board members, divisions, departments, courts, related municipalities or authorities or successor municipalities or authorities, heirs, successors or assigns (hereinafter "SETTLING DEFENDANTS"), by whom any liability is expressly denied. This Settlement and Release Agreement is entered into solely to avoid further expenses of litigation.

FOR AND IN CONSIDERATION OF THE PAYMENT OF FIVE HUNDRED TWENTY FIVE THOUSAND AND 00/100 ($525,000.00) DOLLARS ("CONSIDERATION") from the insurer of the SETTLING DEFENDANTS, to JAMIE LEE PETERSON and his legal guardian, JAMES L. PETERSON of 2117 E. Log Cabin Road NE, Kalkaska, Michigan 49646 (hereinafter collectively, "PLAINTIFF"), adequacy of which is hereby acknowledged, PLAINTIFF, upon payment, hereby agrees to release, acquit and forever discharge any and all actions, causes of action, claims, demands, damages, costs, loss of services, attorney fees (including those allowable under 42 U.S.C. §1988), wage losses, expenses and compensation, known or unknown, in law or in equity, which PLAINTIFF may have against THE SETTLING DEFENDANTS, in their official and individual capacities, and insurers(s), as a result of any act, or failure to act, on their part, as to the claims alleged or which could have been alleged against DEFENDANTS in *Peterson v. Heymes, et al.*, Federal District Court for the Western District of Michigan, Case #15-cv-00969 and/or in United States Court of Appeals for the Sixth Circuit, Case No. 17-2283 (collectively, the "CASE").

Appendix 2

It is further understood and agreed by the undersigned that as soon as possible and within a reasonable amount of time following receipt by SETTLING DEFENDANTS of the executed Settlement and Release Agreement and a Stipulated Order of Dismissal, SETTLING DEFENDANTS shall issue a check for CONSIDERATION made payable to the undersigned's attorney, Loevy & Loevy.

It is further understood and agreed by the undersigned that PLAINTIFF accepts all legal and financial responsibility for any Medicaid, Medicare and/or Medicare Advantage liens arising out of the injuries alleged in this CASE. PLAINTIFF voluntarily accepts this risk and waives any and all claims of any nature and/or damages against the SETTLING DEFENDANTS and the SETTLING DEFENDANTS' insurer/TPA (third-party administrator) asserted by CMS should Medicare take such action, as well as a Private Cause of Action against the SETTLING DEFENDANTS' insurer/TPA under the Medicare Secondary Payer Act ("MSP") pursuant to 42 U.S.C. §1395y(b)(3)(A). PLAINTIFF further agrees to hold harmless, indemnify, and defend SETTLING DEFENDANTS, and their insurer/TPA from any Private Cause of Action arising out of the factual and legal allegations in the CASE, including but not limited to an action to recover or recoup Medicaid, Medicare and/or Medicare Advantage benefits paid or a loss of benefits, if Medicaid, Medicare and/or Medicare Advantage later determines that the money set aside was inadequate or spent inappropriately, or for any recovery sought by Medicaid, Medicare and/or Medicare Advantage including past, present, and future liens.

PLAINTIFF acknowledges that SETTLING DEFENDANTS and their insurer/TPA may be obligated to report the settlement information to Coordination of Benefits Contractor for Medicare in compliance with reporting requirements under the Medicare Secondary Payer Act. PLAINTIFF further acknowledges and understands that SETTLING DEFENDANTS and their

insurer/TPA have no control over how, or in what manner, Medicare will use such information and therefore cannot, will not and do not offer any representations, opinions, statements, warranties (implied or express), or comments on the impact this information will have on PLAINTIFF's future Medicare benefits as a result of entering in to this Release of all claims, and therefore, PLAINTIFF has freely entered into this agreement without any inducement whatsoever.

The parties understand and agree any future action or decision by the United States, Medicare, CMS, or any of its contractors will not render this Release void or ineffective, or in any way affect the finality of this settlement.

It is further understood and agreed by the undersigned that this settlement is a compromise of a disputed claim and that the payment is not to be construed as an admission of liability by the party or parties released. To the contrary, the released parties maintain that all their actions relating to this claim were done in good faith and a sincere effort to comply with the law, and that the sole purpose of this settlement is to resolve a disputed claim and forego the costs of further litigation.

It is further understood and agreed by the undersigned hereto that the injuries and damages sustained may be permanent, that further complications may be possible, and that this is not only a full and final release of all known and anticipated damages and injuries, but also of all unknown and unanticipated damages, injuries or complications, including all consequences thereof, which may later develop or occur.

SETTLING DEFENDANTS cannot, have not, and do not, provide any tax advice to PLAINTIFF in connection with this settlement.

Upon the execution of this Release and Settlement Agreement, SETTLING DEFENDANTS' attorneys will submit the stipulated dismissal order required to terminate the pending case with prejudice and without costs or attorney fees.

It is further understood that this Release contains the entire agreement between the PLAINTIFF and the SETTLING DEFENDANTS hereto and that the terms of this Release are contractual and not mere recitals.

Further, PLAINTIFF and the SETTLING DEFENDANTS have carefully read the foregoing Release and know the contents thereof, agree that the terms contained herein are fair, reasonable and in the best interest of the undersigned and sign the same as their own free acts.

THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT.

Signed, sealed and delivered the __23__ day of __May__, 2018.

_Frances E. Carey_
Witness Frances E. Carey

_Jamie Peterson_
Jamie Lee Peterson

STATE OF MICHIGAN )

                  ) ss

COUNTY OF __KALKASKA__ )

On the __23rd__ day of __May__, 2018, before me personally appeared JAMIE LEE PETERSON, to me known to be the person named herein and who executed the foregoing Release and acknowledged to me that he voluntarily executed the same.

_Frances E. Carey_
Frances E. Carey

4

MAY-23-2018 11:50 From:RJ CAREY          12312584093          To:0          P.6/6

Notary Public, KALKASKA County, MI

My Commission Expires: 10-07-23

Signed, sealed and delivered the 23rd day of May, 2018.

_Frances E Carey_
Witness Frances E. Carey

_James Lee Peterson_
James L. Peterson

STATE OF MICHIGAN     )

                                    ) ss

COUNTY OF Kalkaska    )

On the 23rd day of May, 2018, before me personally appeared JAMES L. PETERSON, to me known to be the person named herein and who executed the foregoing Release and acknowledged to me that he voluntarily executed the same.

_Frances E. Carey_
FRANCES E. Carey
Notary Public, Kalkaska County, MI

My Commission Expires: 10-07-23

Signed, sealed and delivered the 4th day of June, 2018.

_Kathie Lane_
Witness

_G. Gus Morris_
G. Gus Morris
Attorney for Settling Defendants

5

**STATE OF MICHIGAN**

RECʼD JUL 09 2018

**COURT OF CLAIMS**

JAMIE LEE PETERSON, by next friend JAMES
L. PETERSON,

       Plaintiff,

v

STATE OF MiCHIGAN,

       Defendant.

_____/

<u>OPINION AND ORDER</u>

Case No.  17-000169-MZ

Hon. Colleen A. O'Brien

<u>OPINION</u>

Pending before the Court in this action for compensation under the Wrongful
Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq.*, is plaintiff's motion for
summary disposition under MCR 2.116(C)(10).  For the reasons stated herein, the motion is
GRANTED.

I. PERTINENT BACKGROUND

This case has its origins in plaintiff's 1998 convictions for first-degree murder, first-
degree criminal sexual conduct, and larceny from a building.  Plaintiff, who had a history of
psychiatric hospitalizations and purported cognitive impairments, confessed to the victim's
murder in several interviews with police officers in 1997.[1]  Police officers recovered two DNA

---

[1] He also recanted at one point, but he gave multiple confessions after recanting.

Exhibit 3

samples from the victim; however, given the technology available in 1997, only one of the samples was deemed to be testable—at least for purposes of making comparisons to other DNA samples—at the time of trial. Despite plaintiff's insistence in interviews with police officers that he was the donor of the DNA sample, plaintiff was excluded as a donor of the only testable sample. None of the other suspects whose DNA was tested at the time of plaintiff's trial matched the DNA sample recovered. The prosecution at plaintiff's criminal trial proceeded on the theory that plaintiff had an unnamed accomplice,[2] and that plaintiff was the source of the untestable DNA sample found on the victim.

During the investigation of the victim's death, police officers found a candle that had been placed in a tree near the victim's home. Operating under the theory that the candle came from the victim's home, police officers questioned plaintiff about the candle. Plaintiff admitted to taking it and using it to light his way while he was in the victim's house. He also admitted to discarding it when he was leaving her home. The prosecution argued that the candle corroborated plaintiff's confession and demonstrated his guilt.

In 1998, a jury convicted plaintiff of the offenses noted above. Subsequent discoveries in the case began to cast doubt on plaintiff's involvement in the offenses, however. The predominant discovery concerned the DNA evidence. In 2013, the Kalkaska County Prosecutor's office agreed to re-test the DNA samples recovered from the victim. Due to technological advances, the former "untestable" sample could now be tested. This new round of testing excluded plaintiff as the donor of both DNA samples recovered from the victim. In

---

[2] After initially stating that he acted alone, plaintiff named three potential individuals as accomplices. All three were excluded as donors of the DNA found on the victim.

addition, this newest round of testing revealed that an individual named Jason Ryan was a match for both samples found on the victim. Previously, Ryan's DNA was either not tested or it was not tested in a way that offered a meaningful comparison to the DNA samples found on the victim. In addition, the Combined DNA Index System (CODIS), which is a national DNA database maintained by the Federal Bureau of Investigation, was not yet in existence in 1997, such that comparing the DNA sample to known samples—which apparently would have included Ryan—was not an option at the time.

Armed with the results of the 2013 DNA testing, plaintiff moved the Kalkaska Circuit Court for relief from judgment under MCR 6.500 *et seq.* Plaintiff argued that the new DNA evidence, which implicated Ryan, exonerated plaintiff and eviscerated the prosecution's theory at his criminal trial, i.e., that plaintiff perpetrated the offense with an unknown accomplice and that plaintiff was the donor of the untestable sample. Plaintiff argued that there was no evidence—either in the original investigation of the murder or that was subsequently revealed—establishing a connection between plaintiff and Ryan.

In arguing that the new DNA evidence undermined the jury's verdict and entitled him to a new trial, plaintiff argued that his confessions were unreliable, based on his "documental mental illness and cognitive limitations" and based on the nature of the confessions. Plaintiff argued that the police officers who interrogated him supplied many of the details that the prosecution cited as plaintiff's purported inside knowledge of the offense. In addition, plaintiff pointed out that he got a number of details wrong in his confessions.

On August 14, 2014, the Kalkaska Circuit Court entered an opinion and order granting plaintiff's motion for relief from judgment and ordering a new trial. The court concluded that

the results of the DNA testing constituted "new evidence" which would have made a different result probable on retrial. In so concluding, the circuit court observed that the prosecution's theory at plaintiff's trial relied heavily on the notion that plaintiff contributed to the untested DNA sample on the victim's shirt. The subsequent exclusion of plaintiff as being the donor of that sample "rendered null" this theory. Further, the circuit court found that the DNA test results supported the idea that Ryan was the sole perpetrator of the crimes. In this regard, the court remarked that there was "scant evidence that suggests Ryan and [plaintiff] associated with each other at the time of the crimes."

As to plaintiff's confessions and the role played by those confessions, the circuit court noted that there was evidence plaintiff "suffers from mental illness and cognitive limitations." In essence, the circuit court questioned the reliability of plaintiff's confessions, stating that his confessions "will undoubtedly be viewed in a different light at retrial given the spreading awareness of false confessions by the cognitively impaired . . . ." In light of all of the above, the circuit court vacated plaintiff's convictions and granted plaintiff a new trial.

Shortly after the circuit court granted plaintiff a new trial, Michigan State Police officers discovered new evidence about the candle that had been purportedly stolen from the victim's home. This evidence suggested that the candle had not come from the victim's home at all, but that it instead came from the home of one of her neighbors and was placed in the tree innocuously by some teenagers. The evidence—which defendant has not contested in this case—revealed that neighboring children had hosted a gathering while their parents were away, and that the glass holder in which the candle sat had been broken during the gathering. In an effort to keep the broken candle holder from being discovered, some of the children hid the candle in a tree across the street. A fingerprint recovered from the candle matched an individual

-4-

who was at the neighbor's home for a gathering shortly before the victim was murdered. Hence, this new evidence demonstrated that the candle had not come from the victim's home.

Shortly after the revelations about the candle came to light, the Kalkaska County Prosecutor's office dismissed the charges against plaintiff, and he was not retried. He was released from incarceration on or about September 8, 2014.

In late 2014, Ryan, the donor of the DNA found on the victim, was tried for the victim's murder. The first trial ended in a mistrial. Ryan was re-tried in 2015. Before the second trial, Ryan sought to introduce evidence of plaintiff's confessions as part of his defense. The prosecution opposed the motion, arguing that the confessions lacked reliability. In this respect, the prosecutor submitted that plaintiff would likely be "unavailable" for purposes of Ryan's trial because, if called as a witness, he would more than likely invoke his right against self-incrimination. The prosecutor argued that the prior confessions could not be admitted because they were hearsay and no exceptions applied to make the statements admissible. To that end, the prosecution noted that Ryan was likely to rely on MRE 804(b)(3), which provides a hearsay exception for statements tending to expose the declarant to criminal liability and offered to exculpate the accused, but only if "corroborating circumstances clearly indicate the trustworthiness of the statement." In short, the prosecution argued that plaintiff's confessions lacked indicia of reliability and they did not fit within the parameters of MRE 804(b)(3).

The trial court agreed with the prosecution, finding that: (1) plaintiff was unavailable for purposes of Ryan's trial; and (2) that his confessions lacked sufficient indicia of reliability such that they were inadmissible under MRE 804(b)(3). With respect to the unreliability of the confessions, the circuit court noted, among other factors, that plaintiff recanted, that in recanting

he revealed motivations for lying, and the judge who granted plaintiff's motion for new trial found that "the confessions were made under such questionable circumstances as to warrant reversal of [plaintiff's] conviction . . . ."

Ryan was re-tried in October 2015, and he testified in his own defense. He testified that he had a consensual sexual encounter with the victim, but denied harming her. He admitted that he had been staying at a house located on the same street as the victim's house. His testimony made no mention of plaintiff. A jury convicted Ryan of first-degree felony murder and first-degree criminal sexual conduct.

## II. THE INSTANT PROCEEDINGS

On June 12, 2017, plaintiff—through his guardian—filed a complaint under WICA in this Court. This matter is before the Court on plaintiff's motion for summary disposition pursuant to MCR 2.116(C)(10). Plaintiff contends that there is no dispute that: (1) he was convicted of offenses under Michigan law; (2) he was sentenced and imprisoned for those offenses; and (3) his convictions were vacated and the charges against him were dismissed based on the discovery of new evidence. Furthermore, plaintiff posits that three categories of new evidence, i.e., evidence not presented at his criminal trial, demonstrate that he did not commit the underlying offenses or assist in the commission of the offenses. Firstly, he notes that new DNA testing excluded him from both DNA samples and implicated Ryan. Secondly, he notes that his confessions were excluded, at the insistence of the prosecution, in Ryan's criminal trial, based on lack of reliability. On the issue of his confessions, he argues that the doctrine of judicial estoppel should preclude defendant from relying on confessions that "the state" in the prosecution of Ryan successfully argued were too unreliable to be admissible as evidence in that case. Thirdly, he argues that new evidence demonstrates that the candle, which had previously been used to

corroborate his confessions and which he contends was a "key detail" in the case against him, was a red herring. Hence, he contends there is no evidence of his guilt in the offenses perpetrated against the victim.

Defendant's responsive briefing does not expressly ask this Court to deny plaintiff's motion. Nor has defendant asked this Court to issue an order entering summary disposition in its favor. Rather, defendant simply asks this Court to "review the pertinent filings and materials supplied by both parties and decide, in its judgment, whether Plaintiff has shown entitlement to relief under the Wrongful Imprisonment Compensation Act . . . ." Defendant notes that "much of the evidence relied on at [plaintiff's criminal] trial does not hold up." Defendant also notes that plaintiff's confessions are fraught with reliability concerns, and states, in response to plaintiff's judicial estoppel argument that it does not rely on the confessions and that it "does not advance a legal position regarding the veracity of [plaintiff's] confessions."

### III. SUMMARY DISPOSITION REVIEW

This matter is before the Court on plaintiff's motion under MCR 2.116(C)(10). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). The initial burden of production on a motion for summary disposition is on the moving party, which can satisfy its burden by either submitting evidence that negates an essential element of the nonmoving party's claim, or by demonstrating that the nonmoving party's evidence fails to establish an essential element of the nonmoving party's claim. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (citation omitted).

After the moving party satisfies its burden through one of the two means described above, the burden shifts to the nonmoving party. *Lowrey*, 500 Mich at 7. In the face of a properly supported motion for summary disposition, the nonmoving party "may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing there is a genuine issue for trial." MCR 2.116(G)(4). If the adverse party fails to respond in this manner, "judgment, if appropriate, shall be entered against him or her." *Id.* See also *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999) (noting that the Court rules "plainly require[ ] the adverse party to set forth specific facts at the time of the motion showing a genuine issue for trial.").

The documentary evidence submitted for review under MCR 2.116(C)(10)—either in support of the motion or in opposition thereto—must be substantively admissible. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). Stated otherwise, the content of the evidence must be admissible, regardless of whether, at the time of the motion, it is in admissible form. *Id.* For instance, evidence which contains hearsay is plausibly admissible, so long as a hearsay exception applies to the statements at issue. See *Maiden*, 461 Mich at 124-125 (holding that, although a report was plausibly admissible as a business record, the statements contained within the statement were a "second level of hearsay" not subject to an exception, such that the report was inadmissible and could not be considered on summary disposition review).

## IV. ANALYSIS

In order to be entitled to compensation, a WICA plaintiff must establish, by clear and convincing evidence, all of the requirements set forth in MCL 691.1755(1). Initially, the plaintiff must establish that: (1) he was convicted of a crime or crimes under Michigan law; (2)

he was sentenced to a term of imprisonment and served at least part of that sentence; and (3) the judgment of conviction was reversed or vacated and the charges were dismissed or a not-guilty verdict was entered on retrial. MCL 691.1755(1)(a)-(b). In addition, a plaintiff must establish that:

> New evidence demonstrates that the plaintiff did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the conviction, results in the reversal or vacation of the charges in the judgment of conviction or a gubernatorial pardon, and results in either dismissal of all of the charges or a finding of not guilty on all of the charges on retrial. [MCL 691.1755(1)(c).]

The "clear and convincing" standard is "the most demanding standard applied in civil cases[.]" *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995).

In the instant case, the parties agree that there is no dispute as to the elements in MCL 691.1755(1)(a)-(b), i.e., that plaintiff was convicted, sentenced, served part of the sentence, the convictions were reversed, and the charges were subsequently vacated. In addition, defendant has conceded that "new evidence"—as that term is defined in MCL 691.1752(b)—resulted the vacation of plaintiff's convictions and resulted in the dismissal of the charges against plaintiff. The only contention—and the extent to which defendant even contests the same in its briefing is minimal—is whether plaintiff can demonstrate, by clear and convincing evidence, that the new evidence demonstrates that he did not perpetrate the offenses and that he was not an accomplice or accessory to the acts that formed the basis of his convictions. Based on the documentary evidence submitted by the parties, the Court concludes that there is no genuine issue of material fact with respect to whether plaintiff has met that burden, and that he is entitled to judgment as a matter of law.

As it must do when evaluating a motion for summary disposition, the Court first examines the evidence plaintiff, the moving party, submitted in support of his motion. Primarily, plaintiff has submitted evidence demonstrating that both DNA samples found on the victim— including the unknown sample which was originally used against plaintiff at his criminal trial— belonged to Ryan. As noted by the trial court in granting plaintiff's motion for relief from judgment, the significance of this DNA evidence effectively destroyed the prosecution's theory at plaintiff's criminal trial. Indeed, the original theory used to convict plaintiff was that he was the donor of this untestable sample; under that theory plaintiff's guilt hinged on inferences that could only be drawn from the mystery surrounding the sample. Subsequent testing has removed any mystery concerning the sample and has excluded plaintiff.

That Ryan was the only donor of the DNA found on the victim is of particular significance because, as the circuit court noted, there is little, if any, evidence that plaintiff and Ryan knew or associated with one another, let alone were associated with one another to such a degree that they would have collaborated to commit a heinous offense as was at issue in this case. Plaintiff supports his contention that he and Ryan did not know each other with an affidavit from an associate who knows both men, and who averred that the men were "in different social circles." Moreover, the circuit court's opinion and order granting plaintiff relief from judgment notes that there is little, if any, evidence that Ryan and plaintiff even knew each other. And Ryan, as defendant's briefing admits in this case, denied knowing plaintiff in his pre-arrest interviews with police officers.

In addition to the DNA evidence implicating Ryan, plaintiff has provided this Court with new evidence that discredits any inculpatory inferences that could be drawn from the presence of the candle found near the victim's home. A review of the trial court record reveals that the

candle was used to demonstrate plaintiff's guilt at his criminal trial and to corroborate his confessions. The new evidence presented by plaintiff reveals that the candle was, in essence, a red herring. In this respect, plaintiff has provided affidavits from one of the victim's former neighbors and from an individual who frequented the neighbor's home explaining why the candle was found in the tree. Moreover, fingerprint evidence obtained after plaintiff's criminal trial shows that plaintiff was not the individual who left a fingerprint on the candle.

Furthermore, plaintiff has presented argument and documentary evidence regarding the unreliable nature of his confessions, and he contends that this Court should not consider the contents of the same in determining whether he committed the underlying offenses. This includes documentary evidence concerning his mental health history and cognitive limitations. In addition, he notes—and defendant has not contested the same—that the police officers who interviewed him supplied plaintiff with many of the details that were used to corroborate his confessions. Moreover, plaintiff has noted that many of the details of his confessions were incorrect. The Kalkaska Circuit Court, in granting his motion for relief and in denying Ryan's motion to admit plaintiff's confessions in his criminal proceedings, noted many of these same concerns. And, those concerns were significant enough that the Kalkaska County Prosecutor's Office argued that the confessions were too unreliable to be admissible in Ryan's trial.

In sum, the Court finds that plaintiff satisfied his burden of identifying the issues as to which he believed there is no genuine issue of material fact and of supporting his motion for summary disposition with documentary evidence under MCR 2.116(C)(10). See *Barnard*, 285 Mich App at 369-370 (describing the moving party's burden). As a result, the burden "shifts to the opposing party to establish that a genuine issue of material fact exists." *Id.* (citation and quotation marks omitted).

In response to plaintiff's properly supported motion, defendant has not expressly asked this Court to deny plaintiff's motion; rather, as noted above, defendant merely asks this Court to review the evidence. In addition, defendant candidly admits that the DNA evidence implicating Ryan "casts substantial doubt on [plaintiff's] involvement." As for the documentary evidence cited in support of its position, defendant's response to plaintiff's motion is as noteworthy for what it cites in support as for what it expressly declines to cite in support. As for what it does not cite in support of its position, defendant contends that it is not relying on plaintiff's prior confessions and that this Court need not address plaintiff's judicial estoppel argument. In addition, defendant declines to, in its words, "advance a legal position" regarding the confessions.

In light of defendant's argument—or lack thereof—about plaintiff's prior confessions, this Court concludes that the confessions are not properly before it on (C)(10) review and that they need not be considered. Indeed, defendant has declined to advocate a position regarding the confessions, and denies that it is relying on them in this case. In light of defendant's failure to advocate for the use of the confessions in this case, the Court declines to generate an argument on defendant's behalf. See *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 633; 752 NW2d 479 (2008) (declaring, in general, that a court will decline to make an argument on behalf of a party). Moreover, it must be noted that defendant, as the nonmoving party, has a duty to respond to plaintiff's properly supported motion for summary disposition with documentary evidence of its own. MCR 2.116(G)(4); *Maiden*, 461 Mich at 121. This evidence must be "plausibly admissible." *Maiden*, 461 Mich at 124. Where defendant declines to advance an argument as to why the now-maligned confessions are plausibly admissible, the Court concludes that the confessions are not properly before it, such that the Court has no duty to consider the

same.  Cf. *Barnard*, 285 Mich App at 377-378 (discussing documentary evidence properly submitted before a court for review).  Defendant cannot foist its obligation to identify a genuine issue of material fact onto this Court by failing to make a meaningful argument as to why the Court should even consider the—as defendant repeatedly and readily admits— disparaged confessions.. *Id*. at 377, 377 n 5.

Defendant presents only two[3] other pieces of information which it contends "might reasonably suggest" plaintiff's involvement in the offenses at issue; neither demonstrates the existence of a genuine issue of material fact.  Firstly, defendant notes hearsay statements contained within police reports which suggest the possibility that, a few years prior to the victim's murder, plaintiff and Ryan may have been part of a group of students that smoked cigarettes outside of the high school Ryan attended.[4]  Documents offered in support of a party's motion under MCR 2.116(C)(10) must be substantively admissible, even if the evidence is not presented in admissible form.  *Barnard Mfg*, 285 Mich App at 373.  Here, defendant relies on police reports, which are themselves hearsay statements.  See *Maiden*, 461 Mich at 124.  Moreover, the statements within the reports are also hearsay, and defendant has offered no argument as to why either the reports or the statements contained within them could be admissible.  In *Maiden*, the Supreme Court concluded that this precise type of documentary evidence, i.e., hearsay statements contained within police reports, should not be considered under

---

[3] Defendant's briefing attempts to note two details from plaintiff's confessions.  It does so, despite contending that it is not relying on the confessions.  Given the above discussion regarding defendant's failure to make a meaningful attempt to properly put the confessions before the Court, the Court declines to consider defendant's piecemeal attempt at using the confessions.

[4] Plaintiff did not attend the high school, or at least did not attend it at the same time as Ryan attended the school.

MCR 2.116(C)(10) review, particularly when the party attempting to rely on the evidence fails to articulate a basis for the admissibility of the statements. As such, the Court will not consider the same.[5]

The final piece of evidence defendant brings to this Court's attention is evidence—introduced at plaintiff's criminal trial—demonstrating that plaintiff was at a gas station that was within a few minutes' walk from the victim's house around the time of the murder. Defendant's argument with regard to this evidence is limited to one sentence, and consists of defendant postulating that plaintiff's presence at the gas station "show[s] an opportunity to commit" the offense. Merely pointing out plaintiff's relative proximity to the victim's home at or around the time of the offense does not create a genuine issue of material fact regarding plaintiff's involvement in the offenses. As was emphasized at plaintiff's criminal trial, Kalkaska is a relatively small town, with a fair portion of the town being within walking distance of the victim's home.[6] Moreover, the testimony at plaintiff's trial reveals that this gas station was one that plaintiff often frequented, making his presence there on the night of the murder less remarkable. Furthermore, defendant has not directed this Court's attention to any additional evidence suggesting his involvement in the offenses. In essence, defendant suggests that,

---

[5] Moreover, even if the Court were to consider the statements, they would not create a genuine issue of material fact. At most, the statements show that Ryan and plaintiff had some degree of familiarity a few years before the murder occurred. There is no evidence whether this relationship continued or whether the men had any involvement together at the time of the murder. Any suggestion that this one-time connection demonstrates the men perpetrated the offenses together is nothing more than speculation. Speculation does not satisfy defendant's burden of responding to plaintiff's motion. See *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994).

[6] In fact, Ryan was staying at a home located within two blocks of the victim's home at the time of the offenses.

because plaintiff was within walking distance of the home on the night of the murder, he could have been involved in some capacity. In light of any other evidence supporting this theory, plaintiff's speculation in this regard will not suffice to create a genuine issue of material fact. See *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994).

In sum, plaintiff has supported his motion for summary disposition with documentary evidence demonstrating that Ryan was the sole source of the DNA found on the victim. In addition, he has presented evidence negating that which was previously believed to link him to the offense. He has also argued that this Court should not consider his confessions. In response, defendant tacitly concedes that the confessions are not properly before this Court for review on summary disposition. And the only evidence defendant submits in response to plaintiff's motion amounts to inadmissible hearsay and/or speculation. Such documentary evidence is not enough to overcome plaintiff's properly supported motion.

## V. CONCLUSION

On the documentary evidence submitted, plaintiff is entitled to summary disposition on his complaint, such that he is entitled to the compensation set forth in WICA under MCL 691.1755(2). The amount of compensation, as well as the amount of attorney fees available under MCL 691.1755(2)(c), shall be established at a hearing scheduled for a later date unless the parties are able to reach an agreement on the same within 30 days.

IT IS HEREBY ORDERED that plaintiff's motion for summary disposition is GRANTED.

July 5, 2018

Colleen A. O'Brien, Judge
Court of Claims

# PETERSON, Jaymie Expenses
## *as of 9/12/2018*

| Vendor | Date | Invoice # | Amount | Notes |
|---|---|---|---|---|
| Gretchen Helfrich | 7/7/15 | | $345.58 | Mileage reimbursement |
| United Airlines | 7/21/15 | | $1,080.20 | |
| United Airlines | 7/21/15 | | $1,080.20 | Not a duplicate charge |
| All Season's Resort | 7/29/15 | | $136.74 | |
| All Season's Resort | 7/29/15 | | $136.74 | Not a duplicate charge |
| Uber Technologies | 7/29/15 | | $21.41 | |
| WT @ Kalkaska | 7/29/15 | | $76.41 | |
| Blue Ribbon Taxi | 7/30/15 | | $33.85 | |
| Enterprise Rent-a-Car | 7/30/15 | | $219.91 | |
| Lot A EPS | 7/30/15 | | $70.00 | |
| United Airlines | 7/30/15 | | $150.00 | |
| United Airlines | 8/13/15 | | $450.20 | |
| United Airlines | 8/13/15 | | $450.20 | |
| Hotels.com | 8/14/15 | | $285.08 | |
| United Airlines | 8/17/15 | | $1.00 | |
| Zipcar, Inc. | 8/17/15 | | $88.49 | |
| Zipcar, Inc. | 8/22/15 | | $238.50 | |
| US District Court | 9/24/15 | | $200.00 | |
| US District Court | 9/28/15 | | $400.00 | |
| UPS | 10/8/15 | | $28.07 | |
| UPS | 10/8/15 | | $30.49 | |
| UPS | 10/8/15 | | $40.94 | |
| USPS | 10/20/15 | | $7.89 | To Village of Kalkaska |
| USPS | 10/20/15 | | $7.89 | To County of Kalkaska |
| Ace Investigative Services | 10/24/15 | | $83.00 | |
| John Hardy, Court Officer | 10/26/15 | | $90.00 | |
| BF Investigations, L.L.C. | 10/28/15 | 1611 | $34.60 | |
| John Hardy, Court Officer | 10/28/15 | | $75.00 | |
| UPS | 10/28/15 | | $30.49 | |
| Clerk of the Supreme Court | 10/29/15 | | $1.00 | |
| Michigan Vital Records | 10/29/15 | | $77.25 | |
| State Bar of Michigan | 10/30/15 | | $105.00 | |
| UPS | 10/30/15 | | $5.92 | |
| UPS | 10/30/15 | | $28.07 | |
| UPS | 11/1/15 | | $5.10 | |
| Clerk of the Supreme Court | 11/11/15 | | $1.00 | |
| Kalkaska County Probate Court | 11/13/15 | | $160.00 | |
| GTL Inmate Phone Service | 11/18/15 | | $15.00 | Part of charge |
| United Parcel Service | 11/21/15 | 0000731RV8475 | $24.40 | |
| United Parcel Service | 11/28/15 | 0000731RV8485 | $24.40 | |
| United Airlines | 1/5/16 | | $1,132.20 | |
| Enterprise Rent-a-Car | 1/12/16 | | $59.79 | |
| Lot A EPS | 1/12/16 | | $35.00 | |
| Court of Appeals, State of Michigan | 1/25/16 | | $375.00 | |
| Kalkaska Probate Court | 1/29/16 | | $25.00 | |
| Susan Wilds | 1/29/16 | | $57.80 | |
| US District Court | 2/1/16 | | $200.00 | |
| Grizzel & Associates, Inc. | 2/2/16 | 162457 | $70.95 | |
| United Parcel Service | 2/6/16 | 0000731RV8066 | $67.98 | |

Exhibit 4

**CASE EXPENSES ALL, PETERSON, Jaymie** as of 7:26 PM, 9/12/2018

# PETERSON, Jaymie Expenses
## *as of 9/12/2018*

| Vendor | Date | Invoice # | Amount | Notes |
|---|---|---|---|---|
| Clerk of the Supreme Court | 2/8/16 | | $1.00 | |
| Hotels.com | 2/10/16 | | $117.65 | |
| State Bar of Michigan | 2/10/16 | | $105.00 | |
| United Parcel Service | 2/13/16 | 0000731RV8076 | $91.18 | |
| State of Michigan | 2/17/16 | | $100.00 | |
| Grizzel & Associates, Inc. | 2/18/16 | 162579 | $60.00 | |
| United Parcel Service | 2/20/16 | 0000731RV8086 | $18.41 | |
| Grizzel & Associates, Inc. | 2/23/16 | 162666 | $56.25 | |
| USPS | 2/23/16 | | $7.45 | To Ruthann Donnelly |
| United Parcel Service | 2/27/16 | 0000731RV8096 | $18.84 | |
| Grizzel & Associates, Inc. | 3/10/16 | 162923 | $51.25 | |
| United Parcel Service | 3/12/16 | 0000731RV8116 | $41.57 | |
| USPS | 3/15/16 | | $7.67 | To Ruthann Donnelly |
| Grizzel & Associates, Inc. | 3/18/16 | 162972 | $50.75 | |
| United Parcel Service | 3/19/16 | 0000731RV8126 | $52.64 | |
| United Parcel Service | 3/26/16 | 0000731RV8136 | $40.60 | |
| Grizzel & Associates, Inc. | 3/29/16 | 163065 | $188.75 | |
| USPS | 3/29/16 | | $8.77 | To Tuth Donnelly |
| United Parcel Service | 4/2/16 | 0000731RV8146 | $44.32 | |
| Kalkaska County Court | 4/12/16 | | $7.00 | |
| United Parcel Service | 4/16/16 | 0000731RV8166 | $24.79 | |
| United Airlines | 6/2/16 | | $1,143.70 | |
| United Airlines | 6/2/16 | | $1,143.70 | Not a duplicate charge |
| All Season's Resort | 6/6/16 | | $92.22 | |
| All Season's Resort | 6/7/16 | | $92.22 | |
| Chi Taxi | 6/7/16 | | $53.30 | |
| Enterprise Rent-a-Car | 6/7/16 | | $78.89 | |
| United Parcel Service | 6/25/16 | 0000731RV8266 | $26.05 | |
| United Parcel Service | 7/2/16 | 0000731RV8276 | -$2.32 | |
| Gretchen Helfrich | 8/30/16 | | $163.50 | Mileage reimbursement |
| United Parcel Service | 9/17/16 | 0000731RV8386 | $31.34 | |
| State Bar of Michigan | 10/6/16 | | $105.00 | |
| United Parcel Service | 10/22/16 | 0000731RV8436 | $98.62 | |
| United Airlines | 12/13/16 | | $1,159.70 | |
| United Parcel Service | 12/17/16 | 0000731RV8516 | $25.39 | |
| Chicago Carriage Cab | 12/19/16 | | $50.00 | |
| Enterprise Rent-a-Car | 12/19/16 | | $237.00 | |
| Enterprise Rent-a-Car | 12/20/16 | | -$157.92 | |
| United Parcel Service | 1/28/17 | 0000731RV8047 | $43.78 | |
| United Airlines | 2/28/17 | | $648.40 | |
| Hotels.com | 3/21/17 | | $151.88 | |
| United Airlines | 3/21/17 | | $200.00 | |
| Supreme Court of Illinois | 3/28/17 | | $15.00 | |
| United Parcel Service | 4/1/17 | 0000731RV8137 | $48.05 | |
| State Bar of Michigan | 4/3/17 | | $105.00 | |
| United Parcel Service | 4/8/17 | 0000731RV8147 | $38.63 | |
| Kalkaska County Clerk | 4/11/17 | | $25.00 | |
| State of Michigan parking | 4/11/17 | | $2.00 | |
| United Parcel Service | 4/15/17 | 0000731RV8157 | $65.62 | |
| Kalkaska County | 4/20/17 | | $42.50 | |

**CASE EXPENSES ALL, PETERSON, Jaymie** as of 7:26 PM, 9/12/2018

# PETERSON, Jaymie Expenses
## *as of 9/12/2018*

| Vendor | Date | Invoice # | Amount | Notes |
|---|---|---|---|---|
| Susan Wilds | 4/24/17 | | $300.00 | |
| Rodell A. Sanders | 5/12/17 | | $379.50 | |
| Rodell A. Sanders | 5/19/17 | | $297.00 | |
| Rodell A. Sanders | 5/26/17 | | $305.25 | |
| Susan Wilds | 6/5/17 | | $92.70 | |
| UPS | 6/7/17 | | $43.92 | |
| Rodell A. Sanders | 6/8/17 | | $371.25 | |
| UPS | 6/11/17 | | $6.54 | |
| Rodell A. Sanders | 6/16/17 | | $189.75 | |
| Susan Wilds | 7/10/17 | | $1,223.75 | |
| Rodell A. Sanders | 7/26/17 | | $132.00 | |
| Clerk of Court | 8/30/17 | | $15.00 | |
| STATE BAR OF MICHIGAN | 9/1/17 | | $105.00 | Appeal Appearance Fee for Debra Loevy |
| United Parcel Service | 9/2/17 | 0000731RV8357 | $55.60 | |
| GPS*KALKASKA COUNTY C | 9/5/17 | | $47.50 | Records |
| TRUEFILING | 9/6/17 | | $386.25 | Appeal Filing Fee |
| TRUEFILING | 9/7/17 | | $103.00 | Filing Fee for Debra Loevy Appearance |
| THE UPS STORE 5249 | 9/16/17 | | $25.95 | food and hygiene items |
| THE UPS STORE 4569 | 9/23/17 | | $7.51 | food and hygiene items |
| TRUEFILING | 10/4/17 | | $103.00 | Filing of State Appeal Dismissal |
| Kalkaska County Clerk | 10/20/17 | | $39.00 | |
| USCA-6TH | 10/26/17 | | $231.00 | Admission of Roshna Bala Keen to 6th Circuit |
| Social Security Administration | 5/3/18 | | $32.00 | |
| United Parcel Service | 5/26/18 | 0000731RV8218 | $24.07 | |
| Pacer | 6/30/18 | | $31.30 | All charges thru this date |
| Westlaw | 7/12/18 | | $1,489.06 | All charges thru this date |
| Pasquali Law Offices, LLC | 8/7/18 | | $4,000.00 | Retainer for probate services |

## Billable Expenses:    $25,220.78